ATTORNEY DISCIPLINARY PROCEEDINGS
liPER CURIAM. *
This disciplinary matter arises from seven counts of formal charges instituted by the Office of Disciplinary Counsel (“ODC”) against Jerome W. Dixon, an attorney licensed to practice Law in Louisiana. The formal charges allege violations of Rules 1.15 (safekeeping the property of a client or third party), 8.4(a) (violating the Rules of Professional Conduct), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
UNDERLYING FACTS

Count I

On July 8, 1993, respondent issued check number 571, drawn upon a City National Bank account entitled “Jerome Wayne Dixon Attorney at Law,” payable to the order of Superfresh in the amount of $37.14. The check was not honored by the bank and was returned NSF. Respondent failed to make the check good until after a complaint was made to the East Baton Rouge Parish District Attorney’s Office.

Count II

On July 14, 1993, respondent issued check number 676, drawn upon a City National Bank account entitled “Jerome Wayne Dixon Attorney at Law,” payable to the order of Superfresh in the amount of $29.88. The check was not honored by the bank and was returned NSF. | ¡¿Respondent failed to make the check good until after a complaint was made to the East Baton Rouge Parish District Attorney’s Office.

Count III

On February 9, 1994, respondent issued check number 2205, drawn upon a Life Savings Bank account entitled “Jerome W. Dixon Attorney at Law — Office Account,” payable to the order of Superstore in the amount of $38.99. The' check was not honored by the bank and was returned NSF. Respondent failed to make the check good *619 until after a complaint was made to the East Baton Rouge Parish District Attorney’s Office.

Count IV

On March 8, 1994, respondent issued check number 1906, drawn upon a Life Savings Bank account entitled “Jerome W. Dixon Attorney at Law — Client’s Trust Account,” payable to the order of the Clerk of Court in the amount of $110.00. The check was not honored by the bank and was returned NSF. Respondent failed to make the check good until after a complaint was made to the East Baton Rouge Parish District Attorney’s Office.

Count V

On March 19, 1994, respondent issued check number 2212, drawn upon a Life Savings Bank account entitled “Jerome W. Dixon Attorney at Law — Office Account,” payable to the order of Winn Dixie in the amount of $68.50. The check was not honored by the bank and was returned NSF. Respondent failed to make the check good until after a complaint was made to the East Baton Rouge Parish District Attorney’s Office.

Count VI

On May 28, 1994, respondent issued check number 2274, drawn upon a Life Savings Bank account entitled “Jerome W. Dixon Attorney at Law — Office Account,” payable to the order of Home Depot in the amount of $92.74. The check was not honored by the bank and was returned NSF. Respondent failed to make the check good until after a complaint was made to the East Baton Rouge Parish District Attorney’s Office.
| VCount VII
On May 23, 1995, respondent issued check number 1048, drawn upon a Liberty Bank account entitled “Jerome W. Dixon Atty. at Law-Client’s Account,” payable to the order of Home Depot in the amount of $200.00. The check was not honored by the bank and was returned NSF. Respondent failed to make the check good until after a complaint was made to the East Baton Rouge Parish District Attorney’s Office.
DISCIPLINARY PROCEEDINGS

Formal Charges

After an investigation, the ODC filed seven counts of formal charges against respondent. Respondent answered the formal charges, generally admitting to the allegations against him and presenting his untreated chemical dependency as a mitigating factor.[1] Prior to the formal hearing, respondent and the ODC filed a joint motion for consent discipline and stipulation of facts, proposing that respondent be transferred to disability inactive status, deferred, conditioned upon two years probation with supervision by the Lawyers Assistance Program (“LAP”) beginning immediately upon approval of the consent discipline.

Disciplinary Board Report

In its report, the disciplinary board noted that respondent has admitted that he violated the professional rules as charged. The board also noted that respondent has made full restitution on all the NSF checks, including service charges and fees and costs charged by the District Attorney. The board found respondent breached duties owed to the legal system, the *620 profession, and the public, and it concluded that respondent’s conduct was knowing and intentional. The board noted the following mitigating factors under A.B.A. Standards § 9.32: personal or emotional problems; timely good faith effort to make restitution; full and free disclosure to the board; character or reputation; | ¿mental disability or chemical dependency including alcoholism or drug abuse; and remorse. The board noted the following aggravating factors under A.B.A. Standards § 9.22: pattern of misconduct; multiple offenses; and prior discipline.[2]
The board acknowledged that the proposed consent discipline is “somewhat unusual.” However, it noted that in Louisiana State Bar Ass’n v. Longenecker, 538 So.2d 156 (La.1988) (on rehearing), this court recognized that chemical dependency may cause an attorney to commit acts of misconduct which would not have occurred but for his impairment. Moreover, the board felt that this court has given favorable consideration to attorneys whose misconduct stems primarily from the impairment, when the attorney recognized his affliction and attempted to overcome it. The board suggested that respondent’s misconduct was directly related to and caused by his alcoholism and drug addiction; furthermore, respondent voluntarily sought treatment for his substance abuse problems and has completed a successful recovery period. The board also found that respondent’s misconduct is unlikely to recur in the absence of a relapse in his recovery from alcohol and drugs.
Accordingly, the board recommended that respondent be transferred to disability inactive status, deferred, conditioned upon two years of probation with supervision by the LAP beginning immediately upon approval of the consent discipline.[3] The board further recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
Neither respondent nor the ODC filed an objection in this court to the recommendation of the disciplinary board.
I .DISCUSSION
In Longenecker, 538 So.2d at 164, we addressed a similar case, in which the lawyer’s misconduct was primarily attributable to his substance abuse problems. We explained that probation is an appropriate sanction when there is little likelihood that the lawyer will cause harm to the public during the period of rehabilitation and when the conditions of probation can be adequately supervised:
It is highly unlikely that the profession or the public will be endangered by the continuation of respondent’s license to practice law under probationary guidelines and supervision. Indeed, conditions of probation not only will insure that respondent will practice according *621 to acceptable standards, but also may provide valuable public service (such as counseling to attorneys undergoing alcohol-related problems). We conclude that while respondent’s misconduct warrants sanction, the more appropriate sanction is a period of probation under conditions imposed by this court.
In the instant matter, there is little likelihood that respondent will cause harm to the public during his period of probation. The probationary conditions provide for adequate supervision of respondent, and provide a mechanism to summarily transfer him to inactive status in the event he relapses into substance abuse. Under these circumstances, probation is an appropriate sanction.
Accordingly, we will accept the proposed consent discipline.
DECREE
Upon review of the findings and recommendation of the disciplinary board, and considering the record, it is the decision of the court that respondent, Jerome W. Dixon, be transferred to disability inactive status pursuant to the provisions of Supreme Court Rule XIX, § 22(C). It is further ordered that Jerome W. Dixon’s transfer to disability inactive status be deferred, and he is immediately placed on supervised probation for two years with the conditions contained in the joint motion for consent discipline. Following successful completion of the period of probation, the transfer to disability inactive status shall be set aside without further order of this court. Any violation of the terms of the probation shall be noticed and heard summarily by a panel of the disciplinary board in an expedited procedure, and the disciplinary board shall promptly file its report on such matters with this court for summary consideration and disposition. All costs and ^expenses in this matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1.
LEMMON, J., concurs and assigns reasons.
VICTORY and TRAYLOR, JJ., dissent and would reject this consent discipline as an insufficient penalty.

 Johnson, J. not on panel. Rule IV, Part II, § 3.

. During the time period involved in the formal charges, respondent was “in the untreated grip of his chemical dependency disease” and was using drugs "excessively." Respondent did not seek professional help, but “predictably withdrew into further denial and blamed others around him for his own mistakes, misjudgments and misfortunes.” In September 1995, respondent “reached his bottom” and voluntarily checked himself into a treatment facility; he then entered a halfway house for recovering drug addicts and alcoholics. Respondent claims to have been drug- and alcohol-free since September 17, 1995. He has been an active participant in Alcoholics Anonymous and has successfully completed a two year period of' probation monitored by the LAP.

. Two separate sets of formal charges were filed against respondent in 1994, alleging violations of Rules 1.1(a) (failure to provide competent representation), 1.3 (failure to act with reasonable diligence in the representation), 1.4 (failure to communicate with a client), 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal), 8.1(b) (knowing failure to respond to a lawful demand for information by a disciplinary authority), 8.1(c) (failure to cooperate with the ODC), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC) of the Rules of Professional Conduct, and of Rule XIX, § 9(c) of the Supreme Court Rules. In its report, the board noted that respondent’s misconduct generally resulted from his "carelessness and his failure to treat his professional responsibilities with any sense of seriousness or priority.” Respondent received a public reprimand and was ordered to complete six additional hours of CLE in the area of law office management for solo practitioners.

. Any failure of respondent to stay clean and sober and/or to fully cooperate with LAP would return respondent to disability inactive status. Respondent would then be required to apply to return to active status, and establish that his disability has been removed.